# United States Court of Appeals for the Federal Circuit

———————

**RAYTHEON COMPANY,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES, LOCKHEED MARTIN CORPORATION, NORTHROP GRUMMAN SYSTEMS CORPORATION,**
*Defendants-Appellees*

———————

2015-5086

———————

Appeal from the United States Court of Federal Claims in No. 1:15-cv-00077-MMS, Judge Margaret M. Sweeney.

———————

Decided: October 23, 2015

———————

MARK COLLEY, Arnold & Porter LLP, Washington, DC, argued for appellant. Also represented by KARA L. DANIELS, NICOLE B. NEUMAN, PAUL E. POMPEO.

STEVEN MICHAEL MAGER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for appellee United States. Also represented by ALEXANDER V. SVERDLOV, KIRK T. MANHARDT, ROBERT E. KIRSCHMAN, JR., BENJAMIN

C. MIZER; MARK E. ALLEN, ADAM N. OLSEN, United States Air Force, Joint Base Andrews, MD.

MARCIA MADSEN, Mayer Brown LLP, Washington, DC, argued for appellee Lockheed Martin Corporation. Also represented by DAVID F. DOWD, LUKE P. LEVASSEUR.

RICHARD A. SAUBER, Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP, Washington, DC, argued for appellee Northrop Grumman Systems Corporation. Also represented by DENEEN J. MELANDER, PETER B. SIEGAL, JENNIFER S. WINDOM.

———————————

Before NEWMAN, DYK, and TARANTO, *Circuit Judges.*

TARANTO, *Circuit Judge.*

The United States awarded a procurement contract to one of three bidders. A General Accountability Office review process, launched by the losing bidders' protests, then led the government to conclude, among other things, that it had given the bidders disparate information on an important subject, thereby violating a regulation that governs the bidding process. When the government reopened the bidding, the initial winning bidder protested the government's reopening decision. The Court of Federal Claims denied the protest. *Raytheon Co. v. United States*, 121 Fed. Cl. 135 (2015) (public version of opinion). We affirm, concluding that the reopening decision was proper based on the disparate-information violation. We need not and do not address a second basis for the government's decision to reassess its original award.

## BACKGROUND

The United States Air Force solicited bids from private companies to supply the complex mix of equipment and services the government was seeking to acquire in order to build a new radar system. *Raytheon*, 121 Fed. Cl.

at 138. The procurement process had several stages. Raytheon Company, Northrop Grumman Systems Corporation, and Lockheed Martin Corporation cleared early-stage hurdles, allowing them to proceed to the next stage. *Id.* at 140; J.A. 290. The Air Force issued to the three companies (and only them) a solicitation for proposals for Engineering and Manufacturing Development. *Raytheon*, 121 Fed. Cl. at 140; J.A. 336–513.

Each bidder, in supporting the price it offered, had to provide detailed estimates of the costs it would incur in performing the contract. J.A. 362–75. More specifically, the bidders all had to "identify and support their proposed cost reductions," *Raytheon*, 121 Fed. Cl. at 140, *i.e.*, their means of lowering the price they would charge to the Air Force under this contract while still performing all work needed to get the job done. *See id.* at 163; J.A. 369–74. The Air Force made clear from the start, and repeatedly, that it would scrutinize each bidder's estimates, including any cost-reduction means (or "affordability initiative"), to try to ensure that it did not choose a supplier whose price was unrealistic: an unrealistic price could indicate that the firm did not understand what was needed to do the job and could end up delaying completion or raising the cost of the radar system. *Raytheon*, 121 Fed. Cl. at 141, 143 (Air Force notice to Raytheon and Northrop: "It is imperative the Offeror substantiate and the Government fully understand any claimed initiative which the Offeror desires to incorporate into its proposed cost/price."); J.A. 362, 394, 398–99, 1209, 1214, 1228, 50839–40.

Raytheon, Northrop, and Lockheed submitted bids. *Raytheon*, 121 Fed. Cl. at 142. The Air Force thereafter sent Evaluation Notices to Raytheon and Northrop that addressed one means of reducing the costs that had to be built into the price for the radar-system contract—namely, treatment of certain costs as independent research and development (IR & D) costs. That classification addresses research conducted by a contractor but not

specifically for a particular government project. *See* 48 C.F.R. §§ 31.205-18, 9904.420. Although such work is contract-independent, its fruits can actually help the contractor deliver the goods and services promised in a particular contract. When that is so, the cost of work implicitly needed for a particular contract, which otherwise might have to be built into the price for that contract, may instead be treated as an IR & D cost, in which case the contractor may recover it through other means (such as, where allowed, by allocation across a wide range of government or private contracts). 48 C.F.R. § 31.205-18. The result is a "cost reduction" for the particular contract without compromising the contractor's ability to fulfill its promises in that contract.

In this case, the Air Force, citing a Federal Acquisition Regulation (FAR) provision, stated in its initial notices to Raytheon and Northrop on the subject: "In accordance with (IAW) FAR 31.205-18 and 10 USC 2320 [sic], any cost claimed or considered to be IR & D or a capital investment shall not be allowable as indirect charges for work implicitly required for performance (necessary to perform the contract) or explicitly required to be done by the terms of the contract." J.A. 1210, 1215, *quoted in Raytheon*, 121 Fed. Cl. at 143. "In other words," as the Court of Federal Claims said, "the contractors would not be permitted to use IR & D costs to reduce their costs of performing the . . . contract if those costs were implicitly *or* explicitly required for contract performance." *Raytheon*, 121 Fed. Cl. at 163–64 (emphasis added).

In response, Northrop did not take issue with the agency's statement precluding treatment of the cost of "implicitly required" work as an IR & D cost. *See id.* at 143. The Court of Federal Claims found that Northrop "raised no objections to the Air Force's statements regard-

ing the allowability of IR & D costs." *Id.* at 165.[1] Raytheon, in contrast, did object. Raytheon told the agency that its statement was contrary to *ATK Thiokol, Inc. v. United States*, 598 F.3d 1329, 1334–35 (Fed. Cir. 2010), which, Raytheon said, "held that research and development costs are allowable as IR & D costs unless specifically required by the contract." J.A. 1218, *quoted in Raytheon*, 121 Fed. Cl. at 143.

What occurred thereafter is undisputed in the respects relevant to our decision. The Air Force changed its view: "the Air Force's understanding changed to conform

---

[1] That finding refers to Northrop's response to one of the Evaluation Notices, but it is true more generally.

The Court of Federal Claims also stated that "[d]uring the first round of discussions, Northrop unambiguously disclaimed any reliance on IR & D cost reductions in response to one [Evaluation Notice]." *Id.* We read that statement as finding only that Northrop at the time was not relying on IR & D cost reductions, not that Northrop disclaimed the possibility of relying on IR & D cost reductions *if* the Air Force permitted. The broader reading would be unsupported. Earlier in the Court of Federal Claims' opinion, where details are given, the only pertinent specific finding about Northrop's responses to the Air Force quotes Northrop as saying simply that "'[t]he execution of this contract does not *require* . . . IR & D funding,'" *id.* at 142 (emphasis added), which does not make any disclaimers about whether Northrop would use IR & D funding if permitted. And in its complaint in this case, Raytheon acknowledged that "the GAO attorney [who gave the prediction of the GAO's view that led the Air Force to reopen the award to Raytheon] said that Northrop had not disclaimed any possibility of relying on future IR&D in the event the Agency took a different view." J.A. 72.

to Raytheon's interpretation; the [Evaluation Notices] that the Air Force had sent to Raytheon and Northrop no longer reflected its position on the allowability of IR & D costs related to implicit contract requirements." *Raytheon*, 121 Fed. Cl. at 147; *id.* at 164; J.A. 1837–39. The Air Force communicated its new view to Raytheon, in substance if not in words, by accepting Raytheon's treatment of certain costs as IR & D costs. In contrast, the Air Force never communicated its new view to Northrop—whose last communication on the subject from the government therefore remained the earlier, contrary view. "Thus, as far as Northrop was aware, the Air Force would not accept IR & D cost reductions for work implicitly required for contract performance." *Raytheon*, 121 Fed. Cl. at 164; *see id.* at 165, 166.

When the bidders later submitted their final proposals, Raytheon "proposed IR & D cost reductions" of a certain amount, *id.* at 167, whereas Northrop did not "propos[e] IR & D cost reductions in line with the IR & D cost reductions proposed by Raytheon," *id.* at 146. The Air Force judged all three bidders to be in technical compliance, rated them the same on "all three technical subfactors," and found "that all of the proposed costs and prices were reasonable and realistic." *Id.* at 145. Raytheon had offered "the lowest total price" in the initial round of proposals, *id.* at 142, and in the final proposals, Raytheon received "the lowest Best Value Assessment," *id.* at 145 (brackets deleted), a figure dependent on the final proposed prices, *id.* at 141. *See also id.* at 167 (noting "differential in proposed prices" between Northrop and at least Raytheon). On that basis, the Air Force awarded the contract to Raytheon. *Id.* at 145.

Northrop and Lockheed filed a series of protests with the Government Accountability Office under 31 U.S.C. § 3551 *et seq. See Raytheon*, 121 Fed. Cl. at 145–46. In one of the protests, Northrop challenged the Air Force's

communications about treating certain costs as IR & D costs. *Id.* at 146. The Air Force defended its conduct. *Id.*

After a hearing before the GAO, "the GAO attorney assigned to the protests invited counsel for the parties to participate in an alternative dispute resolution outcome prediction conference," at which the attorney would inform the parties how she was drafting a written decision for the GAO, though there had not yet been a decision. *Id.* at 148. In the conference held on January 15, 2015, the GAO attorney advised that, if the case proceeded to a final decision, it was "highly likely" that the GAO would sustain the protests "on only two grounds." *Id.* One of the grounds concerned IR & D costs: "the Air Force's discussions with Northrop [on that subject] were misleading and unequal." *Id.* at 149. The GAO attorney "recommended that the Air Force . . . reopen cost/price discussions with all three contractors to explain its current view of the allowability of IR & D costs[] and permit the submission of new final proposal revisions." *Id.*

The next day, in response to the GAO's prediction, the Air Force wrote a letter to the GAO, with copies to the parties, saying that it had "decided to take corrective action." J.A. 2239, *quoted in Raytheon*, 121 Fed. Cl. at 149. In particular, it stated that it "intend[ed] to reopen discussions with all offerors to clarify the allowability of Independent Research and Development (IR & D) as it relates to the cost/price evaluation." *Id.*

Raytheon filed a protest in the Court of Federal Claims under 28 U.S.C. § 1491(b) to challenge the Air Force's decision to take corrective action. *Raytheon*, 121 Fed. Cl. at 149. Following § 1491(b)(4)'s directive to apply the standards set forth in the Administrative Procedure Act, the court considered whether the Air Force's decision to take corrective action "lacked a rational basis or involved a violation of regulation or procedure." *Raytheon*, 121 Fed. Cl. at 150. Under those standards, the court

sustained the Air Force's decision, and rejected Raytheon's challenge, on the administrative record. *Id.* at 167–68.

In particular, the court made the findings recited above regarding the Air Force's disparate communication of its views about treating certain costs as IR & D costs. Among other things, it held that, by advising Raytheon but not Northrop "that it would accept IR & D cost reductions notwithstanding the language of its [Evaluation Notices,] the Air Force engaged in unequal discussions with the contractors." *Id.* at 165. Quoting a regulatory command in the FAR that bars an acquiring agency from engaging in "conduct that . . . [f]avors one offeror over another," 48 C.F.R. § 15.306(e)(1), the court explained that "[d]iscussions are unequal when a procuring agency favors 'one offeror over another.'" *Raytheon*, 121 Fed. Cl. at 164. Accordingly, the court held, the GAO attorney's conclusion to that effect "was rational, and the Air Force's reliance on her conclusion in deciding to take corrective action was also rational." *Id.* at 165.

The court went on to reject Raytheon's argument that Northrop had not shown that the Air Force's conduct prejudiced Northrop. The court ruled that "the GAO attorney . . . implicitly concluded that Northrop had established that it was prejudiced by the Air Force's misleading and unequal discussions," *i.e.*, that "Northrop had a substantial chance of receiving the contract in the absence of the Air Force's misleading and unequal discussions." *Id.* at 167. The court held that conclusion to be rational, noting Northrop's size as a government contractor, the Air Force's equal technical ratings of the bidders, the difference in the final proposed prices of Raytheon and Northrop, Raytheon's proposed IR & D cost reductions, and, therefore, Northrop's financial means to propose IR & D cost reductions of its own that could overcome the "differential in proposed prices." *Id.*

Raytheon appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3). We now affirm.

DISCUSSION

A

Raytheon accepts that, for us to uphold the Air Force decision to reopen the bidding process, it is sufficient for us to conclude that the grounds relied on by the Air Force—here, the grounds informally set out by the GAO attorney in predicting the GAO's likely ruling on the protests of the initial award to Raytheon—rationally justified the reopening under governing law. *See* Raytheon Opening Br. 51. We agree that such a conclusion suffices under the standards of the Administrative Procedure Act, which are incorporated by the bid-protest provision under which this case was brought. 28 U.S.C. § 1491(b)(4); *see Banknote Corp. of America v. United States*, 365 F.3d 1345, 1350 (Fed. Cir. 2004) (following 5 U.S.C. § 706(2)(A) for bid-protest cases). Moreover, we have upheld agency corrective actions taken on the basis of formal GAO determinations where the GAO determinations were rational. *Honeywell, Inc. v. United States*, 870 F.2d 644, 647 (Fed. Cir. 1989); *Turner Construction Co. v. United States*, 645 F.3d 1377, 1383 (Fed. Cir. 2011). Although this case involves a GAO outcome prediction, rather than a GAO decision, Raytheon accepts, and we agree, that rationality of the GAO outcome prediction should suffice. In stating what grounds are sufficient to uphold the bid reopening, we do not and need not say what grounds are necessary.

We conclude that the Air Force's unequal communications regarding IR & D accounting, one of the GAO attorney's grounds, provide a rational basis for the reopening. In 10 U.S.C. § 2305(f)(1), Congress provided that "[i]f, in connection with a protest, the head of an agency determines that [an] . . . award does not comply with the requirements of law or regulation, the head of the agen-

cy . . . may take any action set out in" 31 U.S.C. § 3554(b)(1)(A)–(F), and it is not disputed that the permitted actions include reopening of the bidding process here. *See also* 4 C.F.R. § 21.8 (GAO authority to recommend corrective actions, including where an "award does not comply with statute or regulation"); 48 C.F.R. § 33.102(b)(1) (similar for agency decision on protest). We conclude, agreeing with the GAO attorney, Air Force, and Court of Federal Claims, that the Air Force violated a regulation by its disparate communications regarding the treatment of costs as IR & D costs, a matter of potentially great importance to the bidder's final bidding decisions. That violation provides a rational basis for reopening.

Under 48 C.F.R. § 15.306(e)(1), "[g]overnment personnel involved in the acquisition shall not engage in conduct that—(1) Favors one offeror over another." That regulation, in its common-sense meaning in the context of competitive bidding, requires that the agency avoid giving materially disparate information to bidders on matters that could easily affect their decisions about important aspects of the final competing offers that the agency will be comparing. *See, e.g.*, *AshBritt, Inc. v. United States*, 87 Fed. Cl. 344, 368–69 (2009); *Metcalf Construction Co. v. United States*, 53 Fed. Cl. 617, 625, 633–35 (2002); *Dynacs Engineering Co. v. United States*, 48 Fed. Cl. 124, 133–34 (2000). The Air Force violated that requirement in communicating an important position on cost accounting to Raytheon and Northrop, changing that position, then telling Raytheon but not Northrop of the change. Specifically, the Air Force made clear to Raytheon that it could broadly use IR & D accounting—a matter of clear potential importance to the bottom-line prices of the final bids—and did not give the same information to Northrop, leaving Northrop but not Raytheon to rely on the contrary position the Air Force had earlier stated to the two bidders. That disparity in information favored Raytheon over Northrop, in violation of the regulation.

We also conclude that it was proper for the Court of Federal Claims to infer that the GAO attorney implicitly found that the violation was prejudicial. *Raytheon*, 121 Fed. Cl. at 167. In many contexts, officials are presumed to be following the law governing their actions. *See*, *e.g.*, *United States v. Chem. Found., Inc.,* 272 U.S. 1, 14–15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."); *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004); *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1304 (Fed. Cir. 2008) (agency is "presumed to have properly done its job"). Here, in the absence of a written decision from the GAO—an absence inherent in the outcome-prediction situation presented—it is proper to presume that the GAO attorney was relying on the legal standards the GAO would have applied in deciding the protest, which include consideration of prejudice, 4 C.F.R. § 21.8(b), under the "substantial chance" standard applicable in bid protests in court, *In re Lockheed Martin Integrated Systems, Inc.*, B-408134.3, B-408134.5, 2013 CPD ¶ 169, 2013 WL 3830053, at *5 (Comp. Gen. July 3, 2013) ("Competitive prejudice is an essential element of a viable protest; where the protester fails to demonstrate that, but for the agency's actions, it would have had a substantial chance of receiving the award, there is no basis for finding prejudice, and our Office will not sustain the protest."). And that presumption finds confirmation in this case because notes from the outcome-prediction conference refer to the GAO attorney's remarks about prejudice in discussing at least one of the protests at issue. J.A. 2213, 2215.

On the merits of the prejudice issue, we agree with the Court of Federal Claims' determination that there was a sufficient factual basis for the GAO attorney, and hence the Air Force, to find a "substantial chance" that

Northrop would have received the award. *Raytheon*, 121 Fed. Cl. at 167. That standard does not require a finding that a losing bidder "would have received the contract." *Id.*; *see Bannum, Inc. v. United States*, 404 F.3d 1346, 1358 (Fed. Cir. 2005). On this issue, which is a question of fact, *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057 (Fed. Cir. 2000), the implicit finding by the GAO attorney, and hence the Air Force, was properly reviewed deferentially by the Court of Federal Claims in its ruling on the administrative record. We have recited the public evidence in support of the prejudice finding, focused on what Northrop could have done to shrink the "differential in proposed prices" in the final offers had it known what Raytheon knew about the Air Force's change of position regarding treatment of costs as IR & D costs. *Raytheon*, 121 Fed. Cl. at 167. Confidential portions of the record bolster the public basis for finding prejudice. We conclude that the Court of Federal Claims properly upheld the implied finding of prejudice from the disparate-information violation.

B

Raytheon's challenges do not undermine the foregoing rationale for upholding the Air Force's reopening of the bidding based on the disparity between what the Air Force told Raytheon and what it told Northrop about the permissibility of treating certain costs as IR & D costs.

1. Raytheon contends that Northrop waived its challenge on this ground by failing to complain to the Air Force before the award was made. Raytheon Br. 49–50. That contention relies on decisions establishing a general rule that a losing bidder waives a post-award challenge to the terms of a solicitation if it does not object to the terms before the bidding process closes. *See Bannum, Inc. v. United States*, 779 F.3d 1376, 1380 (Fed. Cir. 2015); *COMINT Systems Corp. v. United States*, 700 F.3d 1377, 1381–82 (Fed. Cir. 2012); *Blue & Gold Fleet, L.P. v.*

*United States*, 492 F.3d 1308, 1315 (Fed. Cir. 2007); *Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1582 (Fed. Cir. 1996). But that principle does not apply to the disparate-information violation here.

The disparate-information violation was not an error in the solicitation. It occurred during the Air Force's post-solicitation process of discussion and evaluation, and Northrop had no reason to know before the award was made that the Air Force had changed its mind about IR & D costs and had told Raytheon but not Northrop of the change. *See Raytheon*, 121 Fed. Cl. at 166. This kind of violation has not been, and cannot sensibly be, subject to a requirement of objection before the bidding closes. *See Bannum*, 779 F.3d at 1381 ("at least as a general matter, a bidder cannot be expected to challenge an agency's evaluation of bids, in contrast to the terms of solicitation, until the evaluation occurs"); *COMINT*, 700 F.3d at 1383 n.6 (not applying waiver principle to challenge to agency action during evaluation process that challenger did not learn of until the award).

2. Raytheon also argues that, under this court's decision in *ATK Thiokol*, the Air Force's position expressly set forth in its initial IR & D announcement was so clearly inconsistent with the FAR regulation cited in that announcement that this court must attribute to all bidders, including Northrop, knowledge of the correct understanding of IR & D treatment as a matter of law. Raytheon relies on attribution-of-knowledge reasoning in cases from other contexts, cases that resolve non-regulatory, non-protest issues distinct from the issues presented here. *See Raytheon*, 121 Fed. Cl. at 166 (noting cases that involve claims for rescission or reformation of contracts). Raytheon seeks to extend the attribution idea to this context. It contends that all bidders (hence Northrop) must be deemed to have had the same information as Raytheon (so that there was no unequal information) as a matter of law. Raytheon Br. 36–49. This contention is independent

of the circumstances of any particular bidder in the process.

The premise of Raytheon's argument is that the Air Force's initial view was clearly inconsistent with the cited FAR provision—an inconsistency that the Air Force did not initially perceive and that Northrop questions. But we need not rule on the soundness of that premise. Even without so ruling, we reject extension of the attribution-of-knowledge idea to cover the situation before us.

The Air Force communicated disparate information to Raytheon and Northrop *about its position* regarding treatment of certain costs as IR & D costs. That disparity cannot be dismissed as a matter of law unless we can say that the information about the Air Force's *position* simply could not have mattered in the bidding process (on the assumption that Raytheon is right about *ATK Thiokol*). Raytheon's argument seeks to deny the facially evident regulatory violation based on disparate information by establishing that the particular information at issue— regarding the Air Force's position on IR & D costs—so clearly could not matter to bidders that it must be disregarded. We do not think that Raytheon has carried its burden of justifying that conclusion.

3. Raytheon argues that Northrop in particular was not prejudiced by remaining in the dark about the Air Force's revised view on the treatment of certain costs as IR & D costs. At bottom, Raytheon argues that Northrop would not have taken significant advantage of the new permissive approach to IR & D costs if it had known of the Air Force's change of position before submitting its final bid. Raytheon Br. 50–60. Raytheon's argument presents a record-specific question. The question is what Northrop might have done in its final offer had it been told of the new Air Force position. We think that the GAO attorney and the Air Force had sufficient reason to find prejudice

under a substantial-chance standard, as the Court of Federal Claims held and as discussed above.

At least in these circumstances, and perhaps more generally, there also is no basis for invoking a regulation that permits the government to "tailor" its discussions to particular bidders, 48 C.F.R. § 15.306(d)(1), to somehow negate or excuse the unequal-information violation. Accordingly, we hold that the government committed no error in reopening the bidding based on that violation.

## C

The Air Force offered a second reason for reassessing its award to Raytheon—based, like the first, on the statements of the GAO attorney about a likely GAO ruling on the protests of that award. In particular, Raytheon had made changes to the technology it was offering after the Air Force had conducted a technology assessment in an earlier round of the development process. The Air Force, following the GAO attorney, concluded that, in its final review leading to the award, it had not followed solicitation requirements for ensuring substantiation of the "technology readiness" of the altered "critical technology element" and therefore had to reassess Raytheon's proposal. *Raytheon*, 121 Fed. Cl. at 148–49.

The Court of Federal Claims upheld that Air Force determination. *Id.* at 160–63. But we need not address the issue. Raytheon has not offered, and we do not see, any reason that this technology-reassessment issue should be decided once we have concluded that the Air Force properly reopened the bidding process because of the unequal-information violation.

## CONCLUSION

We affirm the judgment of the Court of Federal Claims denying Raytheon's protest.

No costs.

**AFFIRMED**