# United States Court of Appeals for the Federal Circuit

_____

**COMINT SYSTEMS CORPORATION AND EYEIT.COM, INC., JOINT VENTURE,**
*Plaintiff-Appellants,*

AND

**NETSERVICES & ASSOCIATES, LLC,**
*Plaintiff,*

v.

**UNITED STATES,**
*Defendant-Appellee,*

AND

**NETCENTRICS CORPORATION,**
*Defendant-Appellee,*

AND

**DIGITAL MANAGEMENT, INC.,**
*Defendant,*

AND

**POWERTEK CORPORATION,**
*Defendant.*

_____

2012-5039

_____

Appeal from the United States Court of Federal Claims in consolidated case nos. 11-CV-400 and 11-CV-416, Judge Margaret M. Sweeney.

Decided: December 7, 2012

PHILIP F. HUDOCK, of Reston, Virginia, argued for plaintiff-appellant.

ALEXANDER V. SVERDLOV, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee United States. With him on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and PATRICIA M. MCCARTHY, Assistant Director. Of counsel on the brief were ANDREW BRAMNICK and LISA MARIE GOLDEN, Assistant General Counsel, Washington Headquarters Services & Pentagon Force Protection Agency, Office of General Counsel, Department of Defense, of Washington, DC.

KAREN R. HARBAUGH, Squire Sanders (US) LLP, of Washington, DC, argued for defendant-appellee Netcentrics Corporation. With her on the brief were ROBERT E. GREGG and JEREMY W. DUTRA.

Before BRYSON, DYK, and PROST, *Circuit Judges*.

DYK, *Circuit Judge*.

This case involves contracts awarded by the United States Department of Defense through the Washington Headquarters Service ("the agency") for information technology services. After the award, Joint Venture of COMINT Systems Corporation and EyeIT.com, Inc. ("Comint"), an unsuccessful bidder, brought a bid protest action in the United States Court of Federal Claims

("Claims Court"), challenging the procurement. The Claims Court dismissed Comint's challenge, finding that Comint lacked standing to challenge the solicitation or the award because the agency had not erred in rejecting Comint's bid on technical grounds. We hold that Comint failed to preserve its right to challenge the solicitation by failing to raise its objections before award and that Comint has not demonstrated standing to protest the agency's failure to award it a contract under the solicitation. Accordingly, we affirm.

BACKGROUND

On August 2, 2010, the agency issued a solicitation seeking offers for a multiple award, indefinite delivery/indefinite quantity contract for information technology services. The agency described the services to be acquired as "Net-Centric Integrated Enterprise Information Technology Services." J.A. 2. These services include help desk, server, network, and applications support services. The solicitation instructed bidders to submit separate bids for the Basic Contract, Task Order 1, and Task Order 2.[1] The solicitation stated that the agency would first evaluate which offers represented "the best value to the Government for award of the Basic Contract," and that those offers would "then be further evaluated for award of Task Order 1 and 2." J.A. 6594. Fourteen bidders submitted proposals by September 13, 2010, including Comint. Every bidder, including Comint, submitted separate bids for the Basic Contract and Task Orders 1 and 2.

During the course of the review of the submitted bids, the agency decided to limit the initial award to the Basic

---

[1]    "[A t]ask order [is] an order for services placed against an established contract or with Government sources." 48 C.F.R. § 2.101.

Contract. Accordingly, on January 19, 2011, the agency issued Amendment 5 to the solicitation. Amendment 5 informed offerors that Task Order 1 and Task Order 2 "no longer reflect[ed] the Government requirements," and that the task orders would "not be awarded concurrent with the Basic Contract(s)." J.A. 6688. The amendment converted the task orders into sample tasks and indicated that the agency would continue to use bidders' proposals for those tasks when evaluating the pricing factor for the award of the Basic Contract. Amendment 5 made clear that the agency would "*NOT* accept any revisions to the proposals." J.A. 6688 (emphasis in original). Comint returned its signed copy of Amendment 5 to the agency the next day, confirming that it "acknowledge[d] receipt of [the] amendment." J.A. 7438.

The agency's Source Selection Evaluation Board ("Evaluation Board") evaluated each proposal. The Evaluation Board analyzed each offer according to the factors set forth in the solicitation, the most important of which was "Quality/Capability." J.A. 336. The Evaluation Board rated the Quality/Capability of Comint's proposal as "marginal," concluding that Comint had a "moderate to high associated risk of unsuccessful performance." J.A. 13054. The Evaluation Board based Comint's marginal Quality/Capability rating on eleven specific technical deficiencies that it identified in Comint's proposal, seven of which it labeled "significant." J.A. 13054–56. The solicitation made clear that even one weakness in a proposal, absent one or more offsetting strengths, warranted a marginal Quality/Capability rating.

The agency's contracting officer also drafted a memorandum evaluating each proposal's price reasonableness.[2] The memorandum stated that "[t]he Contracting Officer [could not] make a definitive price reasonableness determination . . . because [Comint] made an incorrect assumption for Sample Task 1." J.A. 13240. The Contracting Officer found that Comint "incorrectly assume[d] that all user workstations contain no user specific data that must be maintained, captured, or transferred to the 'new' or reimaged workstation." *Id.* As a result of this erroneous pricing assumption, the Contracting Officer concluded that Comint was ineligible for award under the Basic Contract.

On April 6, 2011, the agency issued awards for the Basic Contract to NetCentrics Corporation, Digital Management, Inc., and PowerTek Corporation. Each awardee had received an "outstanding" Quality/Capability rating. No award was made to Comint.

Comint submitted a bid protest to the agency on April 18, 2011. The agency denied Comint's protest on June 1, 2011, finding Comint's protest untimely and lacking merit. On June 20, 2011, Comint brought a bid protest suit in the Claims Court. Comint primarily argued that Amendment 5 changed the solicitation so substantially that the agency was required to either cancel the solicitation or permit offerors to submit revised proposals. Under the Federal Acquisition Regulations, the agency must amend the solicitation when "the Government changes its requirements or terms and conditions." 48 C.F.R.

---

[2] As the Claims Court noted, this memorandum was undated. However, its references to "sample" task orders make clear that it was created after the issuance of Amendment 5. *See Joint Venture of Comint Sys. Corp. & EyeIT.com, Inc. v. United States*, 102 Fed. Cl. 235, 243 (2011).

§ 15.206(a).   However,  the  government  must  cancel  the solicitation and issue a new one if "in the judgment of the contracting officer . . . an amendment proposed for issuance after offers have been received is so substantial as to exceed  what  prospective  offerors  reasonably  could  have anticipated, so that additional sources likely would have submitted offers had the substance of the amendment been  known  to  them."   *Id.* § 15.206(e).   Comint  also claimed, inter alia, that the agency erred in deeming its proposal ineligible, and that its Quality/Capability rating was  arbitrary.   The  Claims  Court  dismissed  Comint's protest on December 2, 2011, finding that Comint lacked standing.   *Joint  Venture  of  Comint  Sys.  Corp.  & EyeIT.com, Inc. v. United States*, 102 Fed. Cl. 235 (2011).

The  Claims  Court  noted  that  a  bid  protest  plaintiff must  show  prejudice  in  order  to  establish  standing  to challenge a government procurement.  *Id.* at 250.  The court  observed  that  in  a  post-award  bid  protest,  the plaintiff must show it had a "substantial chance" of receiving the contract to make a showing of prejudice.  *Id.* at 251.  Applying these standards to Comint, the court noted that Comint's proposal "ranked, at best, ninth based upon its  Quality/Capability  factor  rating,"  and  that  the awardees all obtained "outstanding" ratings.  *Id.* at 252. The  court  concluded  that,  based  on  its  low  technical rating,  Comint  did  not  have  a  substantial  chance  of receiving a contract and thus could not show prejudice. *Id.* at 252–53.  The court dismissed Comint's protest for a lack of standing, without reaching the question of eligibility.  *Id.*  Comint appealed.[3]

---

[3]     The  Claims  Court  also  found  that  Netservices & Associates, LLC, another disappointed bidder, also lacked standing to challenge the procurement.  *Id.* at 253-54.  Netservices did not appeal.

DISCUSSION

The Claims Court has jurisdiction to review bid protests pursuant to 28 U.S.C. § 1491(b)(1). *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1330 (Fed. Cir. 2001). We have jurisdiction over an appeal from the Claims Court under 28 U.S.C. § 1295(a)(3). *Id.* We review de novo whether a party has standing to sue. *Myers Investig. & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002). We review the Claims Court's assessment of agency actions without deference, reapplying the same standard of review applicable in the Claims Court. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005). We evaluate agency actions according to the standards set forth in the Administrative Procedure Act; namely, for whether they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Bannum*, 404 F.3d at 1351.

I

We first consider Comint's challenge to Amendment 5 of the solicitation. The government urges that Comint failed to preserve its challenge to Amendment 5 by failing to raise it until after the contract was awarded to other bidders. We agree that Comint failed to preserve its challenge to Amendment 5 by not raising the issue before the award of the contract. Because we find that Comint failed to preserve its challenge to Amendment 5, we do not reach the question of whether Comint has standing to protest Amendment 5.[4]

---

[4] *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" (quoting *Ruhrgas*

In *Blue & Gold Fleet, L.P. v. United States*, this court held that "a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection afterwards in a § 1491(b) action in the Court of Federal Claims." 492 F.3d 1308, 1315 (Fed. Cir. 2007). Comint points out that *Blue & Gold*'s holding does not explicitly apply to this case since Comint had no opportunity to challenge the solicitation before "the close of the bidding process," Amendment 5 having been adopted after the bidding process closed. Amendment 5 was, however, adopted before the award, and we think the reasoning of *Blue & Gold* applies to all situations in which the protesting party had the opportunity to challenge a solicitation before the award and failed to do so.

There is no question that Comint could have challenged the solicitation before the award. The Federal Acquisition Regulations require that agency contracting officers "consider all protests . . . *whether protests are submitted before or after award*." 48 C.F.R. § 33.102(a) (emphasis added). If efforts to obtain relief from the contracting officer fail, the Tucker Act specifically authorizes pre-award challenges. The statute gives the Claims Court "jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency," and further provides that the Claims Court has jurisdiction "without regard to whether suit is instituted

---

*AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999))). We note, however, that the standing question with respect to a claim that the agency had an obligation to rebid the contract turns on whether the bidder had a substantial chance of securing the award on the rebid, not on whether it had a substantial chance of securing the award under the original solicitation. *See Impresa*, 238 F.3d at 1334.

before or after the contract is awarded." 28 U.S.C. § 1491(b)(1).

The same policy underlying *Blue & Gold* supports its extension to all pre-award situations. In *Blue & Gold*, we explained:

> In the absence of a waiver rule, a contractor with knowledge of a solicitation defect could choose to stay silent . . . . If its [] proposal loses to another bidder, the contractor could then come forward with the defect to restart the bidding process, perhaps with increased knowledge of its competitors. A waiver rule thus prevents contractors from taking advantage of the government and other bidders, and avoids costly after-the-fact litigation.

492 F.3d at 1314.

To be sure, where bringing the challenge prior to the award is not practicable, it may be brought thereafter. But, assuming that there is adequate time in which to do so, a disappointed bidder must bring a challenge to a solicitation containing a patent error or ambiguity prior to the award of the contract.[5] Here, Comint does not claim to have been unaware of the alleged defect in Amendment 5 prior to the award of the contract. Comint signed and returned its copy of the amendment to the agency, signaling its agreement with its terms. Amendment 5 issued on January 19, 2011. Comint signed the amendment on January 20, 2011. The agency did not award the contract until April 6, 2011. Here, Comint had two and a half months between the issuance of Amendment 5 and the

---

[5] Latent errors or ambiguities are not, of course, subject to this requirement. *See Blue & Gold*, 492 F.3d at 1313.

award of the contract in which to file its protest. That was more than an adequate opportunity to object. Only now that the contracts have been awarded to other bidders does Comint seek to "restart the bidding process" by objecting to Amendment 5. *See id.* This is precisely what *Blue & Gold* forbids.

Comint further attempts to excuse its delay by suggesting that Amendment 5 itself forbade Comint from raising its objections. Comint argues that it could not challenge Amendment 5 because the amendment stated that "[t]he Government will *NOT* accept any revisions to the proposals." J.A. 6688 (emphasis in original). However, the amendment only stated that the government would not entertain revised proposals; it did not state that bidders were forbidden from protesting its terms. Nor could it do so.

Finally, we note that the Government Accountability Office ("GAO") applies a similar rule, setting various time limits in which protests must be submitted. *See* 4 C.F.R § 21.2. Unless the basis for the protest becomes apparent later than ten days before the award, the GAO does not permit a disappointed bidder to wait until after the award. *See id.* It would be incongruous to bar later GAO protests but to permit a later court challenge. *See Blue & Gold*, 492 F.3d at 1314.

In summary, Comint had ample time and opportunity to raise its objections to Amendment 5, but chose instead to wait and see whether it would receive an award of the contract. Having done so, Comint cannot now "come forward with [its objections] to restart the bidding process," and get a second bite at the apple. *See id.* Comint failed to preserve its objections to Amendment 5 by not raising them until after the award of the contract.

## II

We turn now to Comint's claim that that the ineligibility determination and the marginal Quality/Capability rating assigned to it by the agency were arbitrary.[6] Here the Claims Court appeared to hold that Comint lacked standing because Comint could not receive an award given its marginal Quality/Capability rating. *See Comint*, 102 Fed. Cl. at 252–53. The question whether a protester "ha[s] a substantial chance of securing the award," *Myers*, 275 F.3d at 1370, turns on whether the protester would have had a substantial chance if not for the alleged errors.[7] Here, the propriety of the marginal Quality/Capability rating assigned to Comint by the agency is determinative of both Comint's standing and the merits.

All three awardees received "outstanding" Quality/Capability ratings. According to the solicitation, a marginal Quality/Capability rating is appropriate when a proposal "has one or more weaknesses, which are not offset by strengths." J.A. 337. Quality/Capability was the most important factor in the evaluation of proposals. The Evaluation Board identified eleven weaknesses in Comint's proposal and found no offsetting strengths. For

---

[6] *Blue & Gold* is inapplicable here because Comint did not learn of its Quality/Capability rating or the ineligibility determination until April 6, 2011, the date on which the contracts were awarded.

[7] Comint argues that under *Weeks Marine, Inc. v. United States*, 575 F.3d 1352 (Fed. Cir. 2009), it need only show a "non-trivial competitive injury" to establish standing and that it is not necessary for it to have had a substantial chance of receiving an award of the contract. However, in *Weeks Marine* this court specifically held that the "non-trivial competitive injury" standard was applicable to "a *pre-award* protest." *Weeks Marine*, 575 F.3d at 1363 (emphasis added). That standard does not apply here because Comint's bid protest is a post-award protest.

example, the Evaluation Board found that while Comint's proposal identified program management tools, it "lack[ed] details as to how [Comint] intend[ed] to integrate and use" those tools. J.A. 13054. It also found that Comint's "discussion of quality management was inadequate" because it referenced "checklists and dashboards that do not yet exist." *Id.* The Evaluation Board also noted that Comint's prior experience was limited to contracts of a small dollar value and that in many of those contracts Comint provided only supporting roles. Thus, Comint's marginal Quality/Capability rating appears consistent with the solicitation.

Comint advances a multitude of theories as to why the agency was wrong to ascribe many of these weaknesses to its proposal, although Comint does not challenge all eleven identified weaknesses. Comint argues that the agency was wrong to criticize its written proposal for a lack of detail while imposing a pagination limitation. Comint also argues that, by noting that Comint's proposal lacked any discussion of corporate resources, the agency improperly required it to "have its own in-house legal department." Appellant's Br. 44. Those objections are without merit. Additionally, Comint suggests that the agency should not have labeled its inexperience on large-scale contracts a weakness because the solicitation required offerors to qualify as small businesses. Other offerors, however, demonstrated appropriate experience with large contracts while still qualifying as small businesses. Comint's challenges to its Quality/Capability rating all involve the "minutiae of the procurement process in such matters as technical ratings . . . which involve discretionary determinations of procurement officials that a court will not second guess." *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996). Comint has not shown that its marginal Quality/Capability rating was

legally erroneous and does not contend that it could have received an award given that rating.

Because Comint has not shown that its marginal Quality/Capability rating was arbitrary or capricious, Comint cannot show that it had a substantial chance of receiving the award. Comint thus cannot demonstrate standing to object to the agency's failure to award it a contract. *See Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003). Because Comint did not preserve its challenge to Amendment 5 to the solicitation and lacks standing to object to the agency's failure to award it a contract, the Claims Court's dismissal of Comint's bid protest is affirmed.[8]

**AFFIRMED**

---

[8] Comint also argues that the Claims Court erred in striking various documents from the administrative record. The documents consist of internal agency communications and drafts relating to best value and pricing documents. Because we see no relevance in those documents, we hold that the Claims Court did not err in striking those documents from the administrative record.