# United States Court of Appeals
# for the Federal Circuit

---

**XOTECH, LLC,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2019-1743

---

Appeal from the United States Court of Federal Claims in No. 1:18-cv-01483-NBF, Senior Judge Nancy B. Firestone.

---

Decided: February 26, 2020

---

WILLIAM T. WELCH, McMahon, Welch & Learned, Reston, VA, argued for plaintiff-appellant.

ERIC LAUFGRABEN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by JOSEPH H. HUNT, ALLISON KIDD-MILLER, ROBERT EDWARD KIRSCHMAN, JR.; BEVERLEY E. HAZLEWOOD, Office of General Counsel, United States Small Business Administration, Washington, DC; WAYNE T. BRANOM, III, Contract and Fiscal Law Division, United States Army Legal Services Agency, Fort Belvoir, VA.

————————————

Before LOURIE, TARANTO, and STOLL, *Circuit Judges.*

LOURIE, *Circuit Judge.*

XOtech, LLC ("XOtech") appeals from a decision of the United States Court of Federal Claims ("the Claims Court") affirming the Small Business Administration Office of Hearings and Appeals' determination that XOtech is not eligible to compete for government contracts set aside for service-disabled-veteran-owned contractors. *See XOtech, LLC v. United States*, 142 Fed. Cl. 313 (2019) ("*Decision*"). Because we agree with the Claims Court that service-disabled veterans do not control "all decisions" of XOtech as required by 13 C.F.R. § 125.13(d), we affirm.

## BACKGROUND

### I

"In an effort to encourage small businesses, Congress has mandated that federal agencies restrict competition for some federal contracts." *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1973 (2016). To that end, the Small Business Act requires many federal agencies to set aside contracts to be awarded to certain categories of small businesses. Service-disabled-veteran-owned ("SDVO") small businesses are one such category. 15 U.S.C. § 644(g)(1)(B). SDVO status is highly beneficial in competing for government contracts because it permits designated contractors to compete for government business against fewer competitors. In order for a business to be eligible to compete for SDVO contracts, service-disabled veterans ("SDVs") must own and control the business. *See, e.g.*, 15 U.S.C. §§ 632(q)(2), 637(d)(3)(E).

The Small Business Administration ("SBA") has promulgated regulations establishing criteria for determining whether SDVs own and control businesses having various corporate forms. *See* 13 C.F.R. §§ 125.12, 125.13. For a

limited liability company ("LLC"), at issue here, one or more SDVs must directly and unconditionally own at least 51% of each class of member interest for the company to be owned by SDVs. 13 C.F.R. § 125.12, (a), (c). For an LLC to be controlled by SDVs, one or more SDVs must (1) control the company's long-term decision making, 13 C.F.R. § 125.13(a); (2) conduct the company's day-to-day management and administration of business operations, *id*.; (3) hold the highest officer position, *id*. § 125.13(b); (4) serve as managing members, *id*. § 125.13(d); (5) have "control over all decisions of the limited liability company," *id*.; and (6) "meet all super majority voting requirements," *id*. § 125.13(f). This appeal concerns whether an SDV "control[s] . . . all decisions" of XOtech under § 125.13(d).

## II

XOtech is organized as an LLC under the Georgia Limited Liability Company Act ("Georgia LLC Act"). Under the Georgia LLC Act, an LLC may be either member-managed or manager-managed. GA. CODE ANN. § 14-11-304(a), (b) (2019). In a member-managed company, the owners are the members and possess the "right and authority to manage the affairs of the limited liability company and to make all decisions with respect thereto." *Id*. § 14-11-304(a). In a manager-managed company, management of the company is vested in one or more managers who have authority to manage the company as provided in the operating agreement. *Id*. § 14-11-304(b).

XOtech was originally organized in 2000 as a member-managed company, with Gary Marullo, an SDV, as the only member. XOtech was later transformed from a member-managed company into a manager-managed company, with Mr. Marullo as the only manager. In 2012, XOtech's Operating Agreement was amended to change XOtech from a single-manager company into a multiple-manager company.

Under its current Operating Agreement, XOtech has four "Members" who are its owners, and each Member's voting interest corresponds to their respective ownership interest. The ownership interests of XOtech's Members are as follows:

| Member | Ownership Percentage |
|---|---|
| Gary Marullo | 90.28% |
| Kathy Marullo | 3.72% |
| Jena Marullo-Webb | 2.00% |
| Joshua Marullo | 4.00% |

J.A. 70.

Certain decisions are reserved to Members and require an affirmative vote of a "Majority Interest," including "(a) the sale, exchange, lease or other transfer or disposition of all, or substantially all, of the Company's assets outside of the ordinary course of business, and (b) any reorganization, merger, liquidation, recapitalization or liquidation of the Company." J.A. 89 ¶ 6.03. A Majority Interest consists of the vote of Members owning a majority of the company, as well the vote of all "Senior Members." Mr. Marullo currently is the only Senior Member. Thus, by virtue of his 90% ownership interest and status as the only Senior Member, Mr. Marullo controls all decisions reserved to Members, which are the most significant and transformative decisions affecting the company.

The Operating Agreement also designates three "Managers": Mr. Marullo, as well as his wife, Kathy, and his son, Joshua, neither of whom is an SDV. Unless specified otherwise in the Operating Agreement, Managers "have full and complete authority, power and discretion to manage and control the business, affairs and properties of the

Company, to make all decisions regarding such matters and to take all action necessary or convenient to carry out the business and affairs of the Company." J.A. 89 ¶ 6.01. The Operating Agreement vests authority for several specific functions in the Managers, including hiring employees, binding XOtech to contracts, borrowing money, determining the amount and timing of distributions to Members, and prosecuting or defending any proceeding in XOtech's name. J.A. 89 ¶ 6.01, 92 ¶ 7.01. Each Manager has equal voting power, and a majority vote of Managers is required to make a management decision. Thus, any management decision requires the vote of at least one non-SDV, and the two non-SDV Managers can make management decisions without Mr. Marullo's vote.

The number of Managers is determined by a Majority Interest of Members, and a Manager may be removed at any time, with or without cause, also by a Majority Interest of Members. Mr. Marullo therefore has the authority unilaterally to set the number of Managers and to remove Managers at will.

III

In 2017, the Department of the Army issued a Request for Proposals seeking an SDVO contractor to provide logistics support for various Army Reserve facilities. XOtech submitted a proposal and ultimately was awarded the contract. An unsuccessful bidder protested the award to the SBA, challenging, among other things, XOtech's eligibility to compete for SDVO contracts. The Director of the SBA's Office of Government Contracting determined that XOtech did not meet the requirements for SDVO status and sustained the protest. Specifically, the Director determined that, although Mr. Marullo, an SDV, owned XOtech, he lacked sufficient control over XOtech's operations because he required the vote of at least one non-SDV to make management decisions. The SBA Office of Hearings and Appeals affirmed the Director's decision. *See Matter of:*

*XOtech, LLC*, SBA No. VET-277, 2018 WL 8786645 (Sept. 14, 2018).

XOtech filed a bid protest in the Claims Court, and both XOtech and the government moved for judgment on the administrative record. The court determined that not all decisions of XOtech are controlled by SDVs because its Operating Agreement requires Mr. Marullo to have the vote of at least one non-SDV to make management decisions. *Decision*, 142 Fed. Cl. at 318. The court also determined that Mr. Marullo's ability to remove non-SDV Managers at will does not give him control over all decisions of XOtech because that removal authority does not restrict the ability of non-SDV managers to make decisions before removal, nor does it enable Mr. Marullo to undo their decisions. *Id*. at 319. The court thus granted the government's motion for judgment on the administrative record.

XOtech appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review decisions of the Claims Court on cross-motions for judgment on the administrative record *de novo*, applying the same standard of review as the trial court. *Palantir USG, Inc. v. United States*, 904 F.3d 980, 989 (Fed. Cir. 2018) (citing *Glenn Def. Marine (Asia), PTE Ltd. v. United States*, 720 F.3d 901, 907 (Fed. Cir. 2013)). Cross-motions for judgment on the administrative record are governed by Rule 52.1(c) of the Rules of the United States Court of Federal Claims. "In deciding these motions, the [Claims Court] considers 'whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence of record.'" *Palantir*, 904 F.3d at 989 (quoting *A & D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006)).

Bid protests are reviewed under the Administrative Procedure Act. *Palantir*, 904 F.3d at 989. Therefore, an agency's decision may be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "without observance of procedure required by law." *Id.* (quoting 5 U.S.C. § 706(2)(A), (D)).

On appeal, XOtech makes two principal arguments. First, XOtech argues that its non-SDV Managers cannot block any management decision that Mr. Marullo takes because he has the authority to remove any Managers that disagree with him and proceed with his decision. Second, XOtech argues that Mr. Marullo's inability to prevent non-SDV Managers from making decisions that he opposes does not preclude SDVO status because the ability of the non-SDV Managers to bind XOtech is no different from that of an ordinary employee to whom decision-making authority has been delegated. In a business of any appreciable size, XOtech argues, at least some decision-making authority must be delegated to employees to conduct day-to-day business, which does not in itself alter control of a company for purposes of SDVO status. And where non-SDV Managers can be removed at will by an SDV, those Managers are no different from ordinary employees whose delegated authority can be revoked at any time. Thus, argues XOtech, the ability of non-SDV Managers who are removable at will to make management decisions without Mr. Marullo's vote does not wrest control over all decisions of Mr. Marullo because those decisions are merely an exercise of authority delegated by Mr. Marullo in the same way as with any removable employee.

In response, the government argues that XOtech cannot satisfy the requirement that SDVs control all decisions of XOtech because its Operating Agreement requires the vote of at least one non-SDV to make management decisions. Mr. Marullo's ability to remove Managers is insufficient to retain control over all decisions, the government

argues, because it does not permit him to veto or undo decisions taken by non-SDV Managers.

We agree with the government and the Claims Court that XOtech is not an SDVO business. To determine who controls the decisions of a company, we look to the terms of its governing documents. Here, XOtech's Operating Agreement vests management authority in three Managers who have equal voting power, and every management decision requires a majority vote. J.A. 90 ¶ 6.06–6.08. Since Mr. Marullo is the only SDV Manager, the vote of at least one non-SDV is required for any management decision. If any portion of an LLC's decision-making authority requires the vote of a non-SDV, then SDVs cannot be said to control all decisions of the company. To establish SDV control, one or more SDVs must be able to independently exercise control of all decisions, without the consent of any non-SDVs. That is not the case here.

XOtech concedes that where a governing document requires a supermajority for certain decisions and SDVs do not control a supermajority of votes, SDVs lack the requisite control for SDVO status under 13 C.F.R. § 125.13. Appellant's Br. 21. We agree, but that reasoning precludes SDVO status for XOtech. Here, XOtech's Operating Agreement requires a simple majority for management decisions, and SDVs do not control a majority of management voting power. Thus, SDVs do not control those decisions and lack the requisite control for SDVO status. In fact, Mr. Marullo's lack of control is even more pronounced, for not only does Mr. Marullo require the vote of at least one non-SDV to make a management decision, his wife and son—neither of whom is an SDV—together compose a majority of Managers who can make decisions even without the vote of Mr. Marullo.

Moreover, Mr. Marullo's ability unilaterally to remove other Managers is insufficient to retain control of all decisions. Until Mr. Marullo actually removes the non-SDV

Managers, all management decisions require the vote of at least one non-SDV.  Mr. Marullo cannot preempt the non-SDV Managers from making decisions, and he cannot undo decisions that they have made even after their removal.

XOtech attempts to minimize the significance of the authority of non-SDV Managers to make decisions without Mr. Marullo's vote by likening them to employees to whom decision-making authority is delegated.  XOtech's argument is unavailing.  The ability of employees to make decisions during day-to-day operations results from a delegation of management authority, and the source of that delegated authority is XOtech's management structure, which Mr. Marullo does not independently control.  Ultimately, the hiring, firing, and delegation of authority to employees are decisions reserved to Managers who are not controlled by SDVs.

The government has established a program to benefit firms owned by SDVs, and if a firm wishes to obtain the benefits of that designation, then it must comply with the rules and structure its business accordingly.  In this case, XOtech at one time presumably qualified for SDVO status when Mr. Marullo was the sole Manager, but it chose to amend its governing documents to include non-SDVs as a majority of Managers and define management authority in such a way as to require at least one of their votes for management decisions.  As noted, Mr. Marullo has authority to remove the non-SDV Managers and reassert SDV control over all decisions of XOtech.  But unless and until he has done so, management decisions require the vote of at least one non-SDV.  Thus, SDVs do not control "all decisions" of the company, and XOtech is not eligible for contracts set aside for SDVO contractors.

## CONCLUSION

We have considered XOtech's remaining arguments but find them unpersuasive.  For the foregoing reasons, the judgment of the Claims Court is affirmed.

**AFFIRMED**