# United States Court of Appeals for the Federal Circuit

---

**HARMONIA HOLDINGS GROUP, LLC,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES, DEV TECHNOLOGY GROUP, INC.,**
*Defendants-Appellees*

---

2020-1538

---

Appeal from the United States Court of Federal Claims in No. 1:19-cv-00674-LAS, Senior Judge Loren A. Smith.

---

Decided: December 7, 2021

---

WALTER BRAD ENGLISH, Maynard, Cooper & Gale, PC, Huntsville, AL, argued for plaintiff-appellant. Also represented by EMILY J. CHANCEY, MICHAEL W. RICH.

DAVID MICHAEL KERR, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee United States. Also represented by DEBORAH ANN BYNUM, JEFFREY B. CLARK, ROBERT EDWARD KIRSCHMAN, JR.

WILLIAM SHOOK, Law Offices of William A. Shook, PLLC, Washington, DC, argued for defendant-appellee

Dev Technology Group, Inc.  Also represented by STEVEN BARENTZEN, Law Office of Steven Barentzen, Washington, DC.

—————————

Before REYNA, SCHALL, and WALLACH,* *Circuit Judges.*

REYNA, *Circuit Judge.*

Harmonia Holdings Group, LLC appeals a decision by the U.S. Court of Federal Claims granting the defendants United States and Dev Technology Group, Inc.'s Cross-Motion for Judgment on the Administrative Record.  Harmonia contends that the Court of Federal Claims erred in determining that Harmonia waived its right to assert before the court the same challenges that it asserted in its pre-award protest to U.S. Customs and Border Protection. We agree and reverse the Court of Federal Claims' decision on waiver; vacate the Court of Federal Claims' decision that Customs and Border Protection did not act in an arbitrary or capricious manner in evaluating Harmonia's proposal and in making an award decision; and remand for the Court of Federal Claims to determine in the first instance the merits of Harmonia's pre-award protest to Customs and Border Patrol and what relief, if any, Harmonia is entitled to based on its pre-award protest.  Because the Court of Federal Claims could determine on remand that Harmonia is entitled to submit a wholly revised proposal requiring a new technical evaluation by Customs and Border Protection, we decline, on mootness grounds, to reach the merits of the Court of Federal Claims' decision with respect to Customs and Border Protection's technical evaluation of Harmonia's proposal submitted on November 13, 2018.

—————————

* Circuit Judge Evan J. Wallach assumed senior status on May 31, 2021.

## BACKGROUND

U.S. Customs and Border Protection ("CBP") is an agency within the U.S. Department of Homeland Security ("DHS") with a broad mandate to provide security at the nation's borders. *See, e.g.*, 6 U.S.C. § 211(c). CBP is a law enforcement organization charged with controlling and monitoring traffic at the borders, including the flow of vehicles, cargo, and people. *See id.*; *see also* J.A. 10292. CBP's Cargo Systems Program Directorate ("CSPD") manages a commercial trade processing system called the Automated Commercial Environment ("ACE"), which "helps reduce the Nation's vulnerability to changing threats without diminishing economic security, by providing threat awareness, prevention, and protection for the homeland." J.A. 10293. "ACE is the backbone of CBP trade processing and risk management activities and the key to implementing many of the agency's trade transformation initiatives." *Id.* ACE provides CBP and DHS automated tools and information for making admissibility decisions before shipments reach U.S. borders and supports cargo revenue collection. *Id.* Further, ACE "is not a single operating system but a collection of applications built on diverse multivendor technological platforms." *Id.* CPSD manages ACE by developing and deploying software code, maintaining existing system architecture, and developing new architecture to support the expanding ACE environment. *Id.*

## The Competition

On July 12, 2018, CBP issued a solicitation requesting quotes for "application development and operation and maintenance support services" as part of CSPD's effort to develop and support cargo systems applications.

J.A. 10292. The solicitation involved six tasks[1]: (1) Contractor Transition In; (2) Contractor Transition Out; (3) Cargo Systems Application Development; (4) Dev/Ops Configuration and Release Management; (5) IT System Security Analysis; and (6) Operations and Maintenance. J.A. 10297–307, 11274–87. The solicitation required each offeror to submit a proposal in two volumes, each containing certain specified information. *See* J.A. 10276–77.

The solicitation explained that the acquisition would be conducted in two phases. J.A. 10235. In Phase I, titled "Oral Presentations," CBP would seek to understand the offerors' responses to certain questions provided by CBP relating to CBP's requirements. *Id.* CBP would evaluate the Phase I responses "holistically with an overall adjectival quality rating" and advise the offerors of their likelihood of being selected. J.A. 10280–81. The intent of this procedure was "to minimize proposal development costs for those [o]fferors with little or no chance of receiving an award." J.A. 10235. Nevertheless, notwithstanding CBP's advice at Phase I, all offerors that participated in Phase I could participate in Phase II. *Id.*

In Phase II, titled "Written Responses," CBP would evaluate the offerors' proposals in accordance with certain evaluation criteria and could make an award without negotiations to the proposal deemed the best value to the government. *Id.* The evaluation criteria included five factors:

- Factor 1: Technical Excellence
  - Sub-Factor 1: Tasks 3, 4, and 6
  - Sub-Factor 2: Task 5
  - Sub-Factor 3: Risk Mitigation Plan

---

[1] The original solicitation included seven tasks, but Amendment 4 dated September 7, 2018, eliminated one task and renumbered the tasks prior to the parties' submission of their initial proposals. *See* J.A. 11274.

- Factor 2: Management Approach
  - Sub-Factor 1: Staffing Plan/Key Personnel
  - Sub-Factor 2: Program Management
  - Sub-Factor 3: Sub-Contracting Management/Teaming Plan
- Factor 3: Quality Assurance
  - Sub-Factor 1: Transition-In Plan
  - Sub-Factor 2: Transition-Out Plan
- Factor 4: Past Performance
- Factor 5: Price

J.A. 10281–85, 13062–63. The solicitation also explained that the factors decreased in importance from factor 1 to factor 5:

> Factor 1 is more significantly important than Factors 2, 3, and 4; Factors 2 and 3 are of equal importance and significantly more important than Factor 4. The sub-factors are hereby described as follows: all sub-factors within Factors 1, 2 and 3 are of equal importance to the other sub-factors within the same Factor. The non-Price Factors, when combined, are significantly more important than the Price Factor (Factor 5).

J.A. 10286.

For Factors 1–3, the solicitation explained that CBP would assess whether each offeror's proposal "exhibit[ed] a thorough understanding of the complexity and magnitude of the requirement and [the] likelihood that the [o]fferor will be successful in performance under each tasking of the [statement of work]." *Id.* CBP would assign an overall adjectival rating for each of the three factors and assign a risk rating for each of their sub-factors. *Id.* "[I]f an [o]fferor receives a high risk rating, regardless of technical ratings or price, that [o]fferor may not be considered for award." *Id.* For Factor 4, CBP would assess performance risk. *Id.*

For Factor 5 relating to price, the solicitation stated that CBP would "evaluate [p]rice [p]roposals to ensure prices are fair and reasonable," and that "[t]he importance of price may increase as the differences between [o]fferor[s'] non-price factors decrease[]." J.A. 10287. The solicitation provided a sample price format and required offerors to submit pricing for the contract line items ("CLINs") listed in the spreadsheet. J.A. 10277, 10334–42. The sample price format explained how the tasks tied into Time and Materials ("T&M") CLINs, and it showed four CLINs each having a list of pertinent job titles. J.A. 10334–42. The four CLINs included (1) Base Development CLIN 001 T&M, (2) On-Demand Services Department CLIN 002 T&M, (3) Base [Operations & Management ("O&M")] CLIN 003 T&M, and (4) On-Demand Services O&M CLIN 004 T&M. *Id.* Taken together, the four CLINs listed over 90 labor categories. *See id.* The solicitation specified that offerors must provide labor rates that are "fully-burdened to include all direct and indirect costs and profit," and that the awardee must, "when so ordered by the Government, provide the necessary management, labor, facilities, materials and supplies to perform tasks as stated in the task order contract." J.A. 10237. Additionally, in a section titled "Task Order Terms and Conditions," the solicitation provided for "Surge CLIN Volume," meaning that CBP could purchase additional services during the performance period. J.A. 10270.

From July through mid-September of 2018, CBP issued eight amendments to the solicitation. In late September 2018, Appellant Harmonia Holdings Group, LLC ("Harmonia"), Appellee Dev Technology Group, Inc. ("Dev Tech"), and other offerors submitted their initial proposals. J.A. 11699–2452.

On October 26, 2018, CBP issued Amendment 9. Amendment 9 altered the period of performance, J.A. 11576; clarified the procedures for "Surge" CLIN purchasing, J.A. 11593; revised Factor 2, Sub-factor 1, by

requiring offerors to "provide a detailed Staffing Plan when the On-Demand/Surge CLINs are needed," J.A. 11589; altered Factor 5 by requiring offerors to conform their respective staffing plans under Factor 2, Sub-factor 1, to their price quotations, J.A. 11593–94; provided a new sample price format spreadsheet that required offerors to resubmit pricing to comply with new CLIN pricing rules, J.A. 11593, 11637; and reduced the number of labor categories from 90 to 10, J.A. 11637, 11475.

On November 1, 2018, CBP issued Amendment 10. Amendment 10 added Task 4 to CLIN 003, J.A. 11696, 11637; established estimated ceilings for CLINs 001, 002, and 004, J.A. 11694; designated CLINs 001 and 003 as "Required Services," i.e., work needed at time of award, *id.*; and added FAR 52.219-14 Limitations on Subcontracting (Jan. 2017), J.A. 11645.

Offerors' proposal revisions in response to Amendments 9 and 10 were due on November 13, 2018. J.A. 11537. CBP specified in both Amendments that offerors would be permitted to revise their proposals with respect to Factor 2, Sub-factor 1 (Staffing Plan/Key Personnel), and Factor 5 (Price). J.A. 11537, 11638.

On November 12, 2018, Harmonia submitted a pre-award agency-level protest to CBP. J.A. 12490–94. Harmonia challenged CBP's limitation of revisions to Factor 2, Sub-factor 1, and Factor 5, arguing that offerors should be able to update their entire proposals in response to Amendments 9 and 10. J.A. 12491–93. Harmonia also challenged Amendment 10's addition of FAR 52.219-14 Limitations on Subcontracting (Jan. 2017), which prohibited offerors from subcontracting more than 50 percent of the work, as a material change warranting "major revisions" to offerors' proposals. Appellant's Br. 9; *see also* J.A. 12493. The next day, November 13, 2018, Harmonia submitted to CBP a proposal with revisions for Factor 2, Sub-factor 1, and Factor 5. J.A. 12561–658.

On December 6, 2018, CBP denied Harmonia's protest. CBP rejected Harmonia's argument that offerors should be able to update their entire proposals in response to Amendments 9 and 10, explaining that those amendments were intended to merely give offerors "additional flexibility towards pricing," "did not change the overall technical solution to be performed," and did not "constitute[] a material change to the solicitation." J.A. 12899. CBP also explained that FAR 52.215-1, which Harmonia cited as permitting offerors to update their entire proposals, in fact "d[id] not apply to this procurement conducted in accordance with FAR Part 8." J.A. 12900. Regarding CBP's limitation on subcontracting under FAR 52.219-14, CBP stated that it would "proceed with evaluations treating all [o]fferors with neutrality regarding compliance with this clause." J.A. 12899.

In a memorandum revised on April 23, 2019, CBP performed a comparative analysis of the proposals and stated that "Dev Tech is more highly ranked than Harmonia, which is considered the lowest ranked technical solution." J.A. 13052. The memorandum further indicated that Harmonia would not be considered in CBP's tradeoff analysis. *Id.*

In an April 25, 2019 letter, CBP informed Harmonia that its proposal was unsuccessful, that a proposal revision would not be considered, and that Dev Tech had won the contract because it had submitted the proposal representing the best value to the government. J.A. 13060. CBP also informed Harmonia of the evaluation results, summarized in the following chart:

| Factor 1 - Technical Excellence | Sat/Low | Sub-Factor 1 - SoW Task 3, 4, 6 *Sat/Med* | Sub-Factor 2 - SoW Task 5 *Sat/Low* | Sub-Factor 3 - Risk Mitigation Plan *Sat/Low* |
|---|---|---|---|---|
| Factor 2 - Management Approach | Marginal/High | Sub-factor 1 - Staffing Plan/Key Personnel Resumes *Marginal/High* | Sub-factor 2 - Program Management Approach *Marginal/High* | Sub-factor 3 - Subcontractor Management Plan / Teaming Arrangements *Sat/Med* |
| Factor 3 - Quality Assurance | Marginal/Medium | Sub-factor 1 - Transition In Plan (Task 1) *Marginal/High* | Sub-factor 2 - Transition Out Plan (Task 2) *Sat/Low* | |
| Factor 4 - Past Performance | Sat/Low | | | |

J.A. 13063.

For each sub-factor, the chart showed CBP's overall adjectival rating (e.g., "Sat," i.e., Satisfactory, or "Marginal"), followed by the risk level (e.g., "Med," i.e., Medium, "High," or "Low"). According to CBP's evaluation, Harmonia received high-risk ratings for three sub-factors: Factor 2, Sub-factor 1 (Staffing Plan/Key Personnel Resumes); Factor 2, Sub-factor 2 (Program Management Approach); and Factor 3, Sub-factor 1 (Task 1, Transition In Plan). *See id.* For all three sub-factors, CBP explained that Harmonia's proposal omitted certain "critical applications" that are "major areas of functionality in O&M": Cargo Release, Foreign Trade Zone ("FTZ"), International Trade Data System ("ITDS"), or Automated Export System ("AES"). J.A. 13064–65. Regarding Factor 5 (price), CBP also stated that the estimated total price for Harmonia's proposal was approximately $10 million greater than that of Dev Tech's proposal. *See* J.A. 13065, 13060.

## The Court of Federal Claims

On May 7, 2019, Harmonia filed a bid protest with the U.S. Court of Federal Claims. *Harmonia Holdings Grp., LLC v. United States*, 146 Fed. Cl. 799, 809 (2020); J.A. 27. In its protest, Harmonia challenged CBP's December 6, 2018 denial of Harmonia's November 12, 2018 pre-award protest. *See Harmonia*, 146 Fed. Cl. at 810, 813. Harmonia also challenged CBP's evaluation of the proposal Harmonia submitted on November 13, 2018. In June 2019, the parties briefed their cross-motions for judgment on the

administrative record and Dev Tech's motion to dismiss. *Id.* at 809; J.A. 27–28. The Court of Federal Claims held oral argument on October 3, 2019. *Harmonia*, 146 Fed. Cl. at 810; J.A. 31.

On January 16, 2020, the Court of Federal Claims issued a decision on the parties' motions. The court first denied Dev Tech's motion to dismiss and found that Harmonia had proven standing by showing it had a substantial chance of winning the contract. *Harmonia*, 146 Fed. Cl. at 811–12. The Court of Federal Claims then denied Harmonia's motion for judgment on the administrative record and granted Dev Tech's cross-motion. The court first addressed Harmonia's bid protest insofar as it involved the same grounds raised in its pre-award protest to the CBP, i.e., the CBP's limitation on proposal revisions following Amendments 9 and 10. *Id.* at 812–14. The court determined that Harmonia's bid protest on these grounds failed for untimeliness. *Id.* It quoted and relied on the following language from *COMINT Systems Corp. v. United States*, 700 F.3d 1377, 1382 (Fed. Cir. 2012), while recognizing that *COMINT* involved different facts:

> To be sure, where bringing the challenge prior to the award is not practicable, it may be brought thereafter. But, ***assuming that there is adequate time in which to do so***, a disappointed bidder must bring a challenge to a solicitation containing a patent error or ambiguity ***prior to the award of the contract***.

*Harmonia*, 146 Fed. Cl. at 813 (emphasis in original). The court observed that "[n]othing in the record or in plaintiff's briefing meaningfully explains the five-month delay in Harmonia filing its pre-award protest with this Court." *Id.* at 814. Given that delay, the court explained that it "cannot conclude that Harmonia diligently or timely pursued its position." *Id.* The court further explained, "Had Harmonia timely filed a pre-award protest with the GAO or

this Court after its agency-level protest was denied, it would have avoided asking the Court to concurrently resolve both pre- and post-award protest grounds months after the Agency's award decision." *Id.* The court concluded that, "while Harmonia facially met the requirements under *Blue & Gold*, Harmonia nevertheless waived its right to bring those claims before this Court by failing to timely and diligently pursue its objections to Amendments 9 and 10." *Id.*

The Court of Federal Claims then addressed Harmonia's post-award challenges to CBP's evaluation of Harmonia's proposal under Factors 1–3[2] and its resulting decision to award the contract to Dev Tech. *See id.* at 814–17. Harmonia had argued that the CBP's evaluation with respect to Factor 2, Sub-factor 1 (Staffing Plan/Key Personnel Resumes) and Sub-factor 2 (Program Management Approach) was "irrational." According to Harmonia, "there can be no doubt" that its proposal was responsive to the solicitation's requirements. *Id.* at 815 (citation omitted). Harmonia contended that the CBP "unreasonably ignor[ed] [the] context" of Harmonia's "proposal description of its responsibility for ITDS and Cargo Release." *Id.* (citation omitted). Harmonia further argued that the CBP assigned undue importance to previously-unstated "[c]ore functional areas" of the work, including Cargo Release, FTZ, ITDS, and AES. *Id.*

The Court of Federal Claims rejected these arguments because the solicitation made clear that the applications not addressed in Harmonia's proposal were a necessary

---

[2]    The Court of Federal Claims declined to reach the merits of Harmonia's arguments with respect to Factor 1 in light of its findings that the CBP did not irrationally assign Harmon's proposal high-risk evaluations with respect to Factor 2, Sub-factors 1 and 2 and Factor 3, Sub-factor 1. *Id.* at 817.

part of the services being procured. *Id.* at 816. And, given the technical nature of the services at issue, the court declined to substitute its judgment for that of the CBP. *Id.*

Harmonia also challenged the CBP's high-risk evaluation of its proposal under Factor 3, Sub-factor 1 (Task 1, Transition In Plan). Harmonia contended that the solicitation merely required offerors to outline their approaches to "taking full ownership of the requirements" and that "there was no requirement to discuss any applications." *Id.* at 816–17 (citation omitted). Harmonia further contended that it met the solicitation's requirements by "specifically mention[ing]" the Cargo Release, ITDS and AES applications. *Id.* at 817 (citation omitted). The Court of Federal Claims rejected Harmonia's arguments, agreeing instead with Dev Tech that the solicitation specifically required those applications and that Harmonia's mere mention of them in its proposal supported CBP's high-risk evaluation under Factor 3, Sub-factor 1. *Id.* (citations omitted). The Court of Federal Claims determined that, based on its high-risk ratings with respect to Factor 2, Sub-factors 1–2, and Factor 3, Sub-factor 1, "Harmonia was ineligible for award . . . in accordance with the terms of the Solicitation." *Id.*

Harmonia appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

STANDARD OF REVIEW

We review decisions by the Court of Federal Claims on cross-motions for judgment on the administrative record de novo, applying the same standard as the trial court. *XOtech, LLC v. United States*, 950 F.3d 1376, 1379 (Fed. Cir. 2020). In deciding cross-motions for judgment on the administrative record, the Court of Federal Claims considers "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence of record." *Id.* (quoting *Palantir USG, Inc. v. United States*, 904 F.3d 980, 989 (Fed. Cir. 2018)).

"Bid protests are reviewed under the Administrative Procedure Act." *XOtech*, 950 F.3d at 1380. Therefore, an agency action may be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "without observance of procedure required by law." *Palantir*, 904 F.3d at 989 (quoting 5 U.S.C. § 706(2)(A), (D)). The substantial evidence standard of 5 U.S.C. § 706(2)(E) applies to a trial court's review of an agency's findings. *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1312 (Fed. Cir. 2007). However, where the Court of Federal Claims makes factual findings from the administrative record in the first instance, we review such findings for clear error. *Id.*

## DISCUSSION

Harmonia contends that the Court of Federal Claims erred in determining that Harmonia waived its right, under *Blue & Gold* and its progeny, to file an action in the Court of Federal Claims asserting the same challenges that it asserted in its pre-award protest to the CBP, which the CBP denied five months earlier. Appellant's Br. 11–13, 15–18. Harmonia contends that the Court of Federal Claims improperly extended the law of *Blue & Gold* by finding waiver even though Harmonia had formally preserved its challenge by timely submitting its pre-award bid protest to CBP. *Id.* Under the proper application of the law, Harmonia argues, it did not waive, and thus should be permitted to pursue in the Court of Federal Claims, its challenge to CBP's limitation on offerors' revisions of their proposals following Amendments 9 and 10. *Id.* Dev Tech and the government argue that *Blue & Gold* waiver should apply, even though Harmonia timely submitted a formal pre-award protest to CBP, because of Harmonia's delay in filing an action following CBP's denial of its pre-award protest. We agree with Harmonia.

The statute establishes a six-year period following claim accrual during which a party may file suit in the

Court of Federal Claims.  28 U.S.C. § 2501 ("Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.").  In *Blue & Gold*, however, we restricted the time for bringing a bid protest in the Court of Federal Claims to a shorter period.  Specifically, we held that

> a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims.

*Blue & Gold*, 492 F.3d at 1313.  We explained that this waiver rule prevents a bidder who is aware of a solicitation defect from waiting to bring its challenge after the award in an attempt to restart the bidding process, "perhaps with increased knowledge of its competitors."  *Id.* at 1314.  "A waiver rule thus prevents contractors from taking advantage of the government and other bidders[] and avoids costly after-the-fact litigation."  *Id.*

Subsequently, in *COMINT*, we expanded the reasoning of *Blue & Gold* to encompass waiver based on delay that occurs after the close of bidding, given that the amendment in that case was adopted after that time.  700 F.3d at 1382.  In *COMINT*, we explained that "[t]here is no question that Comint could have challenged the solicitation before the award."  *Id.*  The protesting party there "d[id] not claim to have been unaware of the alleged defect in Amendment 5 prior to the award of the contract," and it had two and a half months before the award in which to file its protest.  *Id* at 1382–83.  We concluded that "[t]hat was more than an adequate opportunity to object," and that it was improper for Comint to seek to restart the bidding process by objecting to Amendment 5 for the first time after the award.  *Id.* at 1383.

Our cases concluding that *Blue & Gold* waiver applies generally involve a failure to timely object to a known, patent defect in the solicitation. We are not persuaded that our precedent supports applying the *Blue & Gold* waiver rule to this case as the Court of Federal Claims did. In *Bannum, Inc. v. United States*, we explained that "a formal, agency-level protest before the award would likely preserve a protestor's post-award challenge to a solicitation . . . as might a pre-award protest filed with the GAO." 779 F.3d 1376, 1380 (Fed. Cir. 2015). We therefore recognized that the *Blue & Gold* waiver rule is predicated not only on the notion of avoiding delay that could benefit the delaying party, but also on the notion of preserving challenges and providing notice to interested parties. *See id.* Harmonia's undisputedly timely, formal challenge of the solicitation before CBP removes this case from the ambit of *Blue & Gold* and its progeny. Therefore, we reverse the Court of Federal Claims' decision that Harmonia waived, under *Blue & Gold*, its ability to file an action asserting the same grounds of objection that it asserted in its earlier, formal protest before CBP. We remand the case to the Court of Federal Claims for consideration of the pre-award protest that the court previously erroneously denied on *Blue & Gold* grounds. *Harmonia*, 146 Fed. Cl. 812–14.

Our opinion should not be read as condoning delay in filing actions in the Court of Federal Claims. Under certain circumstances, delaying bidders may face adverse consequences, but we are not persuaded in this case that imposition of a *Blue & Gold* waiver should be one of those consequences. The Court of Federal Claims has relatively broad authority under 28 U.S.C. § 1491(b)(2) to fashion a remedy: the court may "award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs." On remand, the Court of Federal Claims might decide under the circumstances of this case that injunctive relief is appropriate.

Harmonia seeks to submit "a fully revised proposal in response to the changed requirements in Amendments 9 and 10." Appellant's Br. 28. Recognizing that the Court of Federal Claims, on remand, could determine that it is appropriate to reopen bidding and allow offerors to submit wholly new proposals, which would require a new technical evaluation by CBP, we vacate the Court of Federal Claims' decision with respect to CBP's technical evaluation of Harmonia's November 13, 2018 proposal on mootness grounds and do not reach its merits. *See Chapman Law Firm Co. v. Greenleaf Constr. Co.*, 490 F.3d 934, 939 (Fed. Cir. 2007) ("When, during the course of litigation, it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should generally be dismissed."). To the extent that the Court of Federal Claims determines on remand that Harmonia is not entitled to submit a wholly revised proposal, the Court of Federal Claims may decide to reinstate its decision that CBP's technical evaluation was rational.

CONCLUSION

We hold that the Court of Federal Claims erred in determining that Harmonia waived, under *Blue & Gold*, its right to assert the same challenges that it asserted in its pre-award bid protest before CBP. We therefore reverse the Court of Federal Claims' waiver decision and vacate its decision that CBP did not act in an arbitrary and capricious manner in evaluating Harmonia's proposal and making an award decision. We remand for the Court of Federal Claims to determine in the first instance whether Harmonia is entitled to relief with respect to its pre-award bid protest. We have considered the parties' remaining arguments and find them unpersuasive.

**REVERSED-IN-PART, VACATED-IN-PART AND REMANDED**

COSTS

No costs.