# In the United States Court of Federal Claims

No. 18-1125C
(Filed under seal July 31, 2022)
(Reissued August 9, 2022)†

```
* * * * * * * * * * * * * * * * * *
                                 *
                                 *
                                 *
VELOCITY TRAINING, LLC,          *
                                 *
             Plaintiff,          *
                                 *
      v.                         *
                                 *
THE UNITED STATES,               *
                                 *
             Defendant,          *
                                 *
      and                        *
                                 *
AIR CENTER HELICOPTERS,          *
INC.,                            *
                                 *
      Defendant–Intervenor.      *
                                 *
                                 *
* * * * * * * * * * * * * * * * * *
```

*Ira E. Hoffman*, Butzel Long, of Washington, D.C., for plaintiff.

*Richard P. Schroeder*, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, D.C., for defendant.

*Sharon L. Larkin*, The Larkin Law Group, LLP, of Washington, D.C., for defendant-intervenor Air Center Helicopters, Inc.

## **ORDER**

WOLSKI, Senior Judge.

---

† This order was initially filed under seal so that the parties could request redactions. None having done so, the order is now reissued for publication with some minor, non-substantive corrections.

The question posed by this post-award bid protest is whether an offeror had standing to challenge procurement decisions, when a subcontractor it proposed to perform an important portion of the solicited work had withdrawn from participation in its proposal following the deadline for submitting final proposal revisions. Under the peculiar circumstances of this case, the Court concludes the answer is no, and thus the government's motion to dismiss the case for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), ECF No. 23, is **GRANTED**.

Plaintiff Velocity Training, LLC (Velocity) was the initial awardee of a General Services Administration (GSA) small business set-aside contract to provide the U.S. Air Force with rotary-wing aircraft support for training purposes. Compl. ¶¶ 8–11, 29; *see* Ex. I to Compl. at 3. Defendant-Intervenor Air Center Helicopters, Inc. (Air Center) filed a protest of the award with the Government Accountability Office (GAO) and submitted a size protest to the Contracting Officer, which was submitted to the relevant Area Office of the U.S. Small Business Administration (SBA). Compl. ¶30; *see* Ex. C to Compl. at 4, ECF No. 1-2 at 15. The following business day, performance of the Velocity contract was suspended by GSA, presumably due to 31 U.S.C. § 3553(d)(3)(A)(ii), the Competition in Contracting Act (CICA) stay. *See* Compl. ¶¶ 2(d), 31. The next day, GSA informed the GAO that it had decided to take corrective action, to reevaluate Velocity's proposal and potentially make a new award. *Id.* ¶¶ 2(e), 31; Ex. O to Compl. at 1. As a consequence, the GAO protest was dismissed as academic. *Id.* ¶¶ 2(f), 32.

As part of the corrective action, GSA reopened discussions with offerors, requesting responses to discussion points that would constitute final proposal revisions. Compl. ¶¶ 33–34; *see* Ex. P to Compl. at 1–3. Velocity was asked to update a chart displaying the relative contributions of its teaming partners to depict the dollar values of the contributions and to incorporate the activities of a large business, AAR Airlift Group, Inc. (AAR). Ex. P to Compl. at 1–2. This large business had been added to the Velocity proposal during previous discussions, *see* Exs. M & N to Compl., in response to GSA's assessment of a deficiency due to the lack of Commercial Airlift Review Board (CARB) certification documentation, Ex. A to Compl. at 1–2; Compl. ¶¶ 27–28. This certification was at that time possessed by AAR. *See* Ex. N to Compl. at 1–2, 8–10. In addition to updating the chart, in the second round of discussions Velocity was also asked if any other members of its team possessed the relevant CARB certification; was informed of a significant weakness in its past experience; was asked if any of its team had been registered and performed services under a particular North American Industry Classification System (NAICS) code; and was offered the chance to revise its price proposal. Ex. P at 2–3.

Due to a miscommunication within the business, Velocity failed to timely submit its final proposal revision, and the document was not considered by GSA.

Compl. ¶ 36 & n.4; Ex. 1 to Pl.'s Resp., ECF No. 35-1 at 6; Ex. 5 to *id.*, ECF No. 35-5 at 2. That document did confirm, however, that only AAR among the proposal's team members had the relevant CARB certification. Ex. Q to Compl. at 2.[1] Within a month after it missed the final proposal revision deadline, Velocity was notified by the SBA Area Office that Air Center had protested plaintiff's status as a small business under the "Ostensible Subcontractor rule," 13 C.F.R. § 121.103(h)(4) (2018), due to the large business AAR allegedly having been proposed to perform "the primary and vital requirements of the contract." Ex. R to Compl. at 1; Compl. ¶ 36.

The following month, in an email response to a request for additional information that Velocity sent to the SBA (and copied GSA), Velocity asked that the size protest be dismissed as moot because "AAR rescinded its offer to subcontract with" Velocity. Ex. B to Compl. at 1–2. As a replacement for AAR, Velocity apparently recruited a small business, Hillsboro Aviation, Inc. (Hillsboro), which possessed the applicable CARB certification. *Id.* Velocity posited that "if GSA were to either reinstate the award to [Velocity] or invite revised proposals, then [Velocity] would substitute Hillsboro for AAR, and the issue of any potential 'ostensible subcontractor' would be moot." *Id.* at 2. Instead of dismissing the size protest, the Area Office found that Velocity was not a small business under the awarded contract due to its reliance on AAR for the CARB certification, triggering the Ostensible Subcontractor rule. Ex. C to Compl. at 6–10; Compl. ¶ 38. Three days later, GSA issued a termination for convenience notice for the Velocity contract, with no reason given other than the termination was "in the Government's best interest." Compl. ¶ 40; Ex. D to *id.*

Velocity timely appealed the size determination to the SBA's Office of Hearing and Appeals (OHA), Ex. E to Compl. at 1–12, arguing that the Area Office erred in its understanding of the certification requirements, *id.*, and noting in passing that it contended before the Area Office that the matter was moot following the withdrawal of AAR from the proposal, *id.* at 7. Eight weeks later, OHA issued an order dismissing Velocity's appeal, on the ground that the cancellation of Velocity's award meant its "proposal is no longer an issue and no live case or controversy exists," because the "ostensible subcontractor rule is a contract-specific issue." Ex. F to Compl. at 2. Somewhat confusingly, the order seemed to use the term "procurement" as a synonym for "contract," as it explained that the type of size

---

[1] When considering an RCFC 12(b) motion to dismiss a case, the Court must assume all factual allegations are true and construe them reasonably in the plaintiff's favor, *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995), unless they are disputed jurisdictional facts---as the plaintiff bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence, *see Thomson v. Gaskill*, 315 U.S. 442, 446 (1942); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

determination in question "is rendered moot by cancellation or termination of the underlying procurement," and that Velocity's "proposal became irrelevant" once "the [Contracting Officer] terminated for convenience the instant procurement." *Id.* at 2–3; Compl. ¶ 42. Velocity took this to mean the solicitation was cancelled, emailing the GSA contracting officer (CO) the next day to inform the agency plaintiff was "ready, willing and able to perform the requirements for the Rotary Wing contract," and asking to be included in communications with prospective offerors. Ex. G to Compl.; *see* Compl. ¶ 43. But the context---including the references to the proposal, the award, and termination for convenience---as well as the reliance upon an earlier order in which it was clear that the appeal was found moot due to the cancellation of a contract although the agency had neither cancelled nor revised the solicitation, *see HRCI-MPSC PASS, LLC*, SBA No. SIZ-5500, 2013 WL 6389271, at \*1–2 (Sept. 18, 2013), indicate that OHA did not mistakenly believe the solicitation was cancelled.

In any event, the CO responded a few days later, informing Velocity that the "solicitation and procurement were never cancelled" and that an award would be based on timely final proposal revisions and the SBA size determination. Ex. G to Compl. She also revealed that the termination of Velocity's award was based on the SBA's size determination. *Id.*; Compl. ¶ 44. A few weeks later, Velocity received the post award notice informing it that Air Center had been awarded the contract, and explaining that the SBA size determination concerning the Velocity proposal (which was not timely revised during the second round of discussions) rendered plaintiff "not eligible for award consideration." Ex. H to Compl. After Velocity requested a debriefing, Compl. ¶ 45, GSA supplied debriefing points, which included the statement that OHA's dismissal of Velocity's SBA appeal kept the Area Office size determination in effect, precluding consideration of plaintiff for the award. Ex. S to Compl. at 2. In a follow-up question, Velocity asked why its email notice that it recruited a small business to replace AAR was not considered "a late modification of an otherwise successful offer" under 48 C.F.R. § 52.212-1(f)(2)(ii), and was told that it was not otherwise successful due to the SBA size determination. Ex. T to Compl. at 2.

A little more than a month later, Velocity filed its post-award bid protest, challenging as arbitrary the SBA OHA dismissal of its appeal, the GSA cancellation of its contract, the SBA Area Office's size determination, and the resulting award to Air Center. Compl. ¶¶ 56–58, 63–65. Velocity traces its problems back to what it terms were "misleading" initial discussions, as under its interpretation the solicitation did not require CARB certification to be included with proposals, and GSA's interpretation to the contrary induced it to add AAR as a team member because the large business had the relevant certification. Compl. ¶¶ 20, 27–28, 55–56, 61–62. Regardless of the appropriateness of the "misleading" label placed on these discussions, Velocity's allegation boils down to the claim that it was put on notice that GSA misinterpreted the solicitation to its competitive disadvantage---but

rather than formally protest this decision with the agency, it revised its proposal to accommodate the misinterpretation. Such acquiescence does not ripen a challenge, but instead waives it under *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313–15 (Fed. Cir. 2007). The Court holds that this waiver rule, designed by the Federal Circuit to require that challenges to patent errors in solicitation terms be preserved by the lodging of a formal objection prior to the proposal deadline, *see Harmonia Holdings Grp., LLC v. United States*, 20 F.4th 759, 766–67 (Fed. Cir. 2021), applies in these circumstances. When an offeror is informed during discussions that it was assessed a deficiency based on what it believes is a misinterpretation of solicitation terms, this patent disagreement requires the offeror to raise its objection in the form of a formal protest with the agency or this court before the submission of its final proposal revision. *See QTC Med. Servs., Inc. v. United States*, 132 Fed. Cl. 610, 622 (2017) (applying *Blue & Gold* waive rule to challenge to discussions). When presented with such an alleged error, an offeror cannot "wait and see whether it would receive an award of the contract," *COMINT Sys. Corp. v. United States*, 700 F.3d 1377, 1383 (Fed. Cir. 2012), but must act to preserve its objections in a timely manner.[2]

Similarly, to the extent the corrective action taken by GSA contributed to Velocity's loss of the contract award, by requiring proposal revisions and a new award, any challenge to that aspect of the process was waived when Velocity failed to protest prior to the proposal revision deadline. It is well-established that a challenge to a procurement decision ripens when the decision forces an awardee or proposed awardee to compete a second time for the award. *See Sys. Appl. & Techs., Inc. v. United States*, 691 F.3d 1374, 1382–85 (Fed. Cir. 2012). But if an offeror fails to challenge such a decision prior to the deadline for submitting proposals in the ensuing stage of the procurement, this protest ground is waived. *See NVE, Inc. v. United States*, 121 Fed. Cl. 169, 173, 179 (2015).[3]

---

[2] The Court notes that the Federal Circuit has not confined the *Blue & Gold* waiver rule to protests of patent errors regarding solicitation terms, but has applied the rule in a broader context. *See Inserso Corp. v. United States*, 961 F.3d 1343, 1350–51 (Fed. Cir. 2020) (applying *Blue & Gold* to the protest of the disclosure of information in a debriefing process for a related procurement under the same solicitation which the offeror "should have known . . . was likely" to have occurred before the submission of final proposals and the award decision).

[3] The undersigned has applied the *Blue & Gold* waiver rule in analogous circumstances. *See, e.g., Land Shark Shredding, LLC v. United States,* No. 18-482C, 2018 WL 2306869, at *1 (Fed. Cl. May 21, 2018) (finding challenge to cancellation of earlier solicitation waived by participation in subsequent procurement); *Cargo Transp. Sys. Co. v. United States*, No. 16-1481C, 2017 WL 1406862, at *1 (Fed. Cl. Apr. 20, 2017) (finding challenge to negative responsibility

Velocity's challenge is thus limited to the interplay of three procurement decisions:  the SBA Area Office size determination, Ex. C to Compl.; the GSA termination of its contract due to this determination, Exs. D & G to *id.*; and the SBA OHA dismissal of its appeal due to the contract termination, Ex. F to *id.*; *see* Compl. ¶¶ 56– 57, 63–64.   Normally, these types of decisions could be the basis for a protest in our court.  *See, e.g.*, *Tinton Falls Lodging Realty, LLC v. United States*, 800 F.3d 1353, 1357–60 (Fed. Cir. 2015).  Indeed, although the merits have not been explored due to the procedural posture of the case, it seems odd that OHA would dismiss the appeal of a size determination as moot merely because the procuring agency acted on the determination and cancelled the contract.[4]  But a protester must establish that it has standing to challenge procurement decisions, and the government and Air Center have called Velocity's standing into question.  *See* Def.'s Mot. to Dismiss, ECF No. 23 at 6–28; Def.-Int.'s Br. in Supp. of Def.'s Mot., ECF No. 24 at 1–6.

Our bid protest jurisdiction is limited to protests brought "by an interested party," 28 U.S.C. § 1491(b)(1), a term which the Federal Circuit has interpreted by borrowing the CICA definition to mean "actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." *Am. Fed'n of Gov't Employees v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001); *see* 31 U.S.C. § 3551(2)(A).  To have standing to pursue a post-award bid protest, an offeror must "show there was a 'substantial chance' it would have received the contract award but for the alleged error in the procurement process." *Info. Tech. & Appls. Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003) (citation omitted).  As this is not a protest which challenges the eligibility of the other offerors to receive the award, *see Tinton Falls*, 800 F.3d at 1359–60, to have had a "substantial chance" at an award, Velocity must show that its proposal could have been the basis for an award, *see, e.g.*, *United States v. IBM Corp.*, 892 F.2d 1006, 1012 (Fed. Cir. 1989) (holding that "interested party" standing requires a responsive bid); *Bannum, Inc. v. United States*, 115 Fed. Cl. 148, 155 (2014) (same).

But the reason Velocity gave to the Area Office in arguing that the size protest was moot---that its proposal was no longer operative due to the withdrawal of AAR, *see* Ex. B to Compl. at 1–2---also demonstrates that plaintiff no longer had a

---

determination waived because this decision prevented award to the protester, which knew of its baseless nature prior to submitting a revised proposal).

[4] The Court presumes that this was due to OHA not being privy to the reason for the termination, which was not explained in the notice.  *See* Ex. D to Compl.  The SBA might consider altering its practice and obtaining the reason for such terminations before finding appeals moot, so that OHA (and not our court) can be the initial appellate forum for such determinations.

proposal that was responsive to the solicitation. It cannot be disputed that AAR was the only team member in Velocity's proposal that possessed the CARB certification. *See* Ex. Q to *id.* at 2. And, as we have seen, Velocity has waived its ability to challenge GSA's interpretation of the solicitation to require proposals to contain this certification, under the *Blue & Gold* doctrine. Simply put, Velocity's proposal minus AAR's participation cannot meet the solicitation requirements.[5]

Velocity suggests that it has standing to challenge GSA's failure to allow it to submit, after the deadline, a revised proposal substituting Hillsboro as a subcontractor in place of AAR. *See* Pl.'s Suppl. Br., ECF No. 47 at 10; Pl.'s Reply to Defs.' Suppl. Brs., ECF No. 49 at 13. Perhaps, had Velocity made a formal request for leave to submit such a revised proposal, GSA's denial of it could be a "decision," 28 U.S.C. § 1491(b)(4), reviewable for rationality in a bid protest. But far from making a request to reopen discussions, plaintiff rather passively told the SBA, in a communication copied to GSA, that "if GSA were to . . . invite revised proposals, then [it] would substitute Hillsboro for AAR." Ex. B to Compl. at 2. As plaintiff has failed to identify any law or regulation requiring an agency to make such an invitation, and did not itself make a request for leave to submit a revised proposal, there is no "decision" denying it this opportunity that can be reviewed by our court.[6]

Thus, even if Velocity is correct that the SBA decisions, and GSA's cancellation of its contract, were improper, it cannot challenge these in our court---as without the participation of AAR, its proposal fails to meet the solicitation requirements. With no substantial chance of an award, Velocity fails to establish "interested party" standing. For the reasons stated above, defendant's motion to dismiss Velocity's complaint under RCFC 12(b)(1) for lack of subject matter jurisdiction is hereby **GRANTED**. The Clerk shall close the case.

**IT IS SO ORDERED.**

s/ Victor J. Wolski
**VICTOR J. WOLSKI**
Senior Judge

---

[5] Moreover, it appears that the reason AAR withdrew is because it no longer had the requisite certification due to recent Federal Aviation Administration reclassifications. *See* Ex. B to Compl. at 1; Tr., ECF No. 44 at 93–94.

[6] For this same reason, any claim regarding the non-existent revised proposal concerning Hillsboro would also be dismissed under the alternative ground of RCFC 12(b)(6), for failure to state a claim upon which relief can be granted.